Filed 1/11/23  P. v. Andreason CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D080269 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. CR 67429) |
| MARK ANDREASON, | |
| Defendant and Appellant. | |


APPEAL from an order of the Superior Court of San Diego County, Howard H. Shore, Judge.  Affirmed.

Thomas Owen, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

In 1984, Mark Andreason pleaded guilty to second degree murder, admitting he "participat[ed] in a felony crime during which the victim suffered injuries that later resulted in his death."  Under the plea, the trial court sentenced Andreason to 15 years to life in prison.  In March 2021, Andreason petitioned for resentencing under then Penal Code section

1170.95,[1] alleging in part he could not be convicted of second degree murder due to changes in sections 188 and 190. The court set the matter for an evidentiary hearing at which the People over Andreason's objection offered, and the court eventually admitted with some exceptions, testimony from Andreason's preliminary hearing transcript. The court denied Andreason's petition, finding the evidence proved beyond a reasonable doubt he was guilty of murder under current law: that he was a direct aider and abettor of the murder, and a fortiori was a major participant acting with reckless indifference to human life.

Appellate counsel filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) indicating he had not been able to identify any arguable issues for reversal on appeal, and asked this court to review the record for error as mandated by *Wende*. We offered Andreason the opportunity to file his own brief on appeal without response. Since then, the California Supreme Court decided in *People v. Delgadillo* (2022) ___ Cal.5th ___ [2022 WL 17748063] (*Delgadillo*) that an appeal from the denial of postconviction relief under section 1172.6 does not implicate a constitutional right to counsel, and thus the procedures set out in *Anders v. California* (1967) 386 U.S. 738 (*Anders*) and *Wende* do not apply. *Delgadillo* prescribed appellate procedures and requirements for providing a defendant notice before a Court of Appeal dismisses an appeal from the denial of a section 1172.6 petition for resentencing. We do not dismiss the appeal, as *Delgadillo* requires us to conclude our notice to Andreason regarding his right to submit briefing was

---

[1] Undesignated statutory references are to the Penal Code. Effective June 30, 2022, the Legislature renumbered section 1170.95 to section 1172.6 without substantive change. (Stats. 2022, ch. 58, § 10.) In this opinion we refer to section 1172.6, though the statute went by its former designation at the time of the proceedings.

deficient. As the court did in *Delgadillo*, we have elected to independently review the record in the interest of judicial economy and hold Andreason is not entitled to section 1172.6 relief. We therefore affirm the order.

FACTUAL BACKGROUND

Andreason's counsel in his brief pursuant to *Wende* summarized the facts presented at the section 1172.6 evidentiary hearing via the preliminary hearing transcript. With some abbreviation, we take the facts from that transcript.

On the morning of December 31, 1983, police found Kenneth Hartford's body at Cuyamaca Elementary School. They found Hartford's belt, which was in a small loop through the buckle, nearby in a puddle of blood. They found Hartford's shoes tied together in an area where it looked like he had struggled or crawled.

Eventually police received information that the murder may have been committed by Andreason and his co-defendant Martin Drews, leading them to interview the two men. After receiving *Miranda* warnings (*People v. Miranda* (1966) 384 U.S. 436), Andreason described the set of keys and the wallet he had stolen. He told the officer that Drews did the stabbing.

After police arrested Andreason and Drews and took them to the station, Andreason admitted involvement in Hartford's murder. He said that on the evening of December 30, 1983, he and Drews were walking when Hartford approached and asked them if they knew where he could buy marijuana. At first they said no, and Hartford walked away. Then Drews said if the man was asking to buy marijuana he probably had money, and suggested they rob him. Andreason had a knife on him at the time. They turned around to tell Hartford they could help him.

3

On the way back to Hartford, Drews asked Andreason for his knife, which Andreason gave to him.  When they caught up with Hartford, they told him they knew where he could get marijuana, and the three of them started walking to a nearby school.  Once at the school, Andreason and Drews turned on Hartford.  Andreason kicked him in the stomach, knocking him to the ground, and then they jumped on him and started punching him.  Drews held the knife to Hartford's throat and told him to shut up.  Andreason said they rolled him over and Andreason took Hartford's wallet out of his back pocket as well as his money, keys, and watch.  They removed Hartford's belt and Andreason used it to tie Hartford's hands behind his back.  During this time, Drews held the knife at Hartford's throat.  Andreason tied Hartford's shoelaces together, and they hit and kicked him more.

Andreason got up and began walking away but Drews continued to kick Hartford in the face.  When Andreason got to the end of a corridor, Drews caught up to Andreason.  Hartford was still making noise and yelling as they were walking away Drews said, "Let's go back and finish him off.  Let's have some fun."  They returned to where Hartford lay on his stomach.  Andreason said Hartford begged them not kill him, and told them he had had an operation and if they hurt him anymore, he would die.  Andreason knelt by Hartford's head and faced his torso, then used both hands to punch Hartford in the kidney-area to knock the breath out of him.  Drews also knelt and began cutting the webbing between Hartford's thumb and forefinger.  Andreason said it was dark, so he was not sure when or where Drews stabbed Hartford.  At some point while Andreason was punching, Hartford suddenly jerked and went quiet.  Drews said, "Let's get out of here."

Andreason described to the officer the route he and Drews took when leaving the scene and said they threw Hartford's property away.  He told the

4

officer that they threw the keys in a drainage ditch near a small bridge. The officer found the keys where Andreason said they threw them but did not locate any of the other property.

S.W. testified at the preliminary hearing that on the night of the murder, Andreason told her he had killed "some guy." Drews told S.W. he stabbed the guy three times, and Andreason showed S.W. a knife, which S.W. saw had dried caked blood on it. Andreason said it was the knife they used to kill the man that night, and that it happened at Cuyamaca Elementary School.

On the day of Andreason's section 1172.6 hearing, his counsel moved to strike and objected to admission of the preliminary hearing transcript on grounds (1) the Evidence Code required the People to show due diligence and unavailability of witnesses to bring in prior testimony; (2) the motivation to cross-examine the witnesses did not include whether Andreason was a major participant or acted with reckless disregard for human life, implicating a Sixth Amendment confrontation violation; and (3) statements attributable to Drews were not admissible against Andreason. Defense counsel objected to giving the People a continuance to address the objections, stating counsel was presumed to know the contents of the Evidence Code.

Pointing out it was unaware of defense counsel's position as everyone had previously stipulated to the record and defense counsel did not submit written objections before the hearing, the court advised the parties that it would hear the evidence and make a decision later after considering argument and conducting research: "I will, for the purpose of this hearing, consider all of the exhibits the People have submitted, and if I decide any of those exhibits are inadmissible, I will consider that, order them stricken and decide whether whatever remains proves beyond a reasonable doubt the

defendant could be convicted of murder under current law. That's the only other way I can proceed if we're not going to continue the matter."

After hearing argument on the issue of Andreason's eligibility, the court requested that the parties brief admissibility of the preliminary hearing evidence before the court would rule on the petition. It issued a statement of decision in March 2022. It found testimony from the preliminary hearing transcript was admissible, except for any section 872, subdivision (b) testimony, unless it was otherwise admissible.[2]

The court denied Andreason's section 1172.6 petition, finding: "The evidence received proves beyond a reasonable doubt that [Andreason] was a direct aider and abettor of the murder in this case. He was present during the entire incident, including the robbery and assault of the victim that resulted in his death. [Andreason] provided the knife that was used in the attack, and willingly returned to the victim's location after companion Drews

---

[2]    Section 1172.6, subdivision (d)(3) provides in part: "The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion. However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of [s]ection 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule. The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens."

The trial court here ruled: "It is clear from this provision that witness testimony received at the preliminary hearing, except for [s]ection 872[,subdivision] (b) evidence, is admissible for the purpose of this court's decision, and this court finds no constitutional impediment to the admission of the preliminary hearing transcript in this case. Therefore, the court will receive and consider all non-Penal Code section 872[, subdivision] (b) testimony from the preliminary hearing."

suggested to [Andreason], '(L)et's go back and finish him off. Let's have some fun.' After the victim begged for his life, [Andreason] continued the vicious assault."

## DISCUSSION

### I. *Delgadillo*

While this appeal was pending, the California Supreme Court decided *Delgadillo*. It held "the procedures set out in *Anders* and *Wende* do not apply to an appeal from the denial of postconviction relief, even if the defendant has a state-created right to the appointment of counsel for that appeal. [Citations.] This is because 'there is no constitutional right to the effective assistance of counsel' in state postconviction proceedings." (*Delgadillo, supra,* ___ Cal.5th ___ [2022 WL 17748063, at p. *4, see also p. *7] ["We therefore find that the procedures set out in *Wende* do not apply to Delgadillo's appeal"].) In part, the court reasoned that "in the context of section 1172.6, . . . '[t]here is no unconditional state or federal constitutional right to counsel to pursue collateral relief from a judgment of conviction.' " (*Delgadillo, supra,* ___ Cal.5th ___ [2022 WL 17748063 at p. *5].) Thus, "[g]iven there is no constitutional right to counsel in a proceeding under section 1172.6, subdivision (c), it would 'defy logic' to conclude there is a constitutional right to counsel 'to appeal [that] state collateral determination.' " (*Ibid.*)

*Delgadillo* rejected the defendant's alternative argument that general due process principles mandated a *Wende*-like procedure for his appeal under the test set forth in *Lassiter v. Department of Social Services* (1981) 452 U.S. 18, 27. (*Delgadillo, supra,* ___ Cal.5th ___ [2022 WL 17748063, at p. *6].) Though the high court did not decide whether *Lassiter* applied to the circumstances, it held given the "elaborate" procedural protections and procedures involved in the defendant's section 1172.6 petition, particularly

7

the appointment of and assistance by counsel, once appointed counsel concluded there were no arguable issues, the value of *Wende* procedures was " 'too slight to compel their invocation.' " (*Delgadillo*, ___ Cal.5th ___ [2022 WL 17748063, at p. *7].)

The *Delgadillo* court prescribed some basic procedures for Courts of Appeal on an appeal from the denial of a section 1172.6 petition in a case where appointed counsel submits notice that the appeal lacks arguable merit: "When appointed counsel finds no arguable issues to be pursued on appeal: (1) counsel should file a brief informing the court of that determination, including a concise recitation of the facts bearing on the denial of the petition; and (2) the court should send, with a copy of counsel's brief, notice to the defendant, informing the defendant of the right to file a supplemental letter or brief and that if no letter or brief is filed within 30 days, the court may dismiss the matter. [Citations.] [¶] If the defendant subsequently files a supplemental brief or letter, the Court of Appeal is required to evaluate the specific arguments presented in that brief and to issue a written opinion. The filing of a supplemental brief or letter does not compel an independent review of the entire record to identify unraised issues. [Citations.] If the defendant does not file a supplemental brief or letter, the Court of Appeal may dismiss the appeal as abandoned. [Citation.] If the appeal is dismissed as abandoned, the Court of Appeal does not need to write an opinion but should notify the defendant when it dismisses the matter. [Citation.] While it is wholly within the court's discretion, the Court of Appeal is not barred from conducting its own independent review of the record in any individual section 1172.6 appeal." (*Delgadillo*, *supra*, ___ Cal.5th ___ [2022 WL 17748063 at p. *8].) *Delgadillo* made clear these procedures were not "exhaustive" and Courts of Appeal are "well suited to identify any additional

8

procedures for counsel and courts to follow in postconviction appeals where counsel finds no arguable issues. The Courts of Appeal are free to adopt additional procedures as they see fit." (*Ibid.*)

In *Delgadillo*, the notice given by the Court of Appeal to the defendant was inadequate for two reasons. First, under its wording, the defendant reasonably could have concluded that the *Wende* procedures would apply and that the Court of Appeal would conduct an independent review of the record, even absent his provision of a supplemental brief. (*Delgadillo, supra,* ___ Cal.5th ___ [2022 WL 17748063 at p. *8].) Second, the notice did not inform the defendant that his appeal would be dismissed as abandoned if he did not file a supplemental brief or letter. (*Ibid.*) However, in the interest of judicial economy, the *Delgadillo* court went ahead and exercised its own independent review of the record and concluded the defendant was not entitled to relief under section 1172.6 as he was the actual killer and the only participant in the killing. (*Delgadillo*, at p. ___ [2022 WL 17748063, at p. *9].)[3] It therefore affirmed the Court of Appeal's holding that in this context, *Wende* procedures were not constitutionally compelled on the defendant's appeal.

II. *Independent Review of the Record Shows Andreason is Not Entitled to Section 1172.6 Relief*

*Delgadillo* makes Andreason's *Wende* appeal subject to dismissal. (*Delgadillo, supra,* ___ Cal.5th ___ [2022 WL 17748063 at p. *8].) But we do not dismiss the appeal because as in *Delgadillo*, our notice to Andreason was deficient because it both invoked *Wende* and did not give Andreason clear

---

3    Because the California Supreme Court independently reviewed the record, it did not determine whether the notice Delgadillo received violated due process. (*Delgadillo, supra,* ___ Cal.5th ___ [2022 WL 17748063, at p. *9, fn. 6].)

9

notice that absent a supplemental brief or letter, his appeal would be dismissed as abandoned.[4] We nevertheless affirm the order. As in *Delgadillo*, having independently reviewed the record, we conclude Andreason is not entitled to section 1172.6 relief.

Section 189, as amended, now provides that in cases where a death occurs during the perpetration or attempted perpetration of a felony listed in section 189, subdivision (a), a person is liable for murder only if the person was the actual killer, the person acted with intent to kill in aiding, assisting, or soliciting the killer, or if the person "was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e)(3).) Our Supreme Court has recognized, however, that " 'notwithstanding [Senate Bill No.] 1437's elimination of natural and probable consequences liability for second degree murder, an aider and abettor who does not expressly intend to aid a killing can still be convicted of second degree murder if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life.' " (*People v. Schell* (2022) 84 Cal.App.5th 437, 442, quoting *People v. Gentile* (2020) 10 Cal.5th 830, 850; see also *People v. Cravens* (2012) 53 Cal.4th 500, 507 [implied malice requires a defendant's awareness of engaging in conduct that endangers the life of another].) Thus, "[t]he theory of second degree implied malice murder[ ] remains valid notwithstanding the recent changes effected by Senate Bill No. 1437 . . . and Senate Bill No. 775." (*Schell*, at p. 442.)

---

4     Our notice to Andreason stated: "Counsel for appellant has filed a brief stating no arguable issues can be found [*Wende, supra*, 25 Cal.3d 436]. The defendant personally is granted 30 days to file any supplemental brief deemed necessary."

In *Schell*, the court upheld an order denying resentencing under section 1172.6, explaining: "Appellant was one of at least eight gang members or gang associates who participated in a vicious assault upon the victim. The trial court could reasonably infer that appellant knew [the victim] was repeatedly being hit in the head with a shovel and bat and that he intended to aid those acts by participating in the assault. The blows to [the victim's] head were loud enough to be heard by several neighbors . . . . Another witness described the group as behaving 'like a bunch of rats going for cheese.' While appellant was participating in the attack, his pants, underwear, and jacket were stained with [the victim's] blood. [¶] Appellant's presence at the scene, his participation in the attack on the victim, his companionship with other perpetrators, his conduct before and after the crimes, and his motive of retaliation for disrespect all support the finding that he aided and abetted an implied malice murder. . . . '[a]ppellant did not need to specifically know that someone would strike [the victim] with [a shovel and bat] in that particular manner to be liable under an implied malice theory. It suffices that he knew he was aiding in a violent attack, knew dangerous weapons were being used against [the victim], and intended to stop [the victim] from escaping or defending himself by helping the perpetrators to surround and hit him.' " (*Id*. at p. 443.)

Andreason's action in supplying the lethal weapon to his codefendant Drews, his presence at the scene, his acts in facilitating the murder and ability to prevent it (had he encouraged Drews not to return to Hartford) would indicate he was a major participant within the meaning of *People v. Banks* (2015) 61 Cal.4th 788, 803 [listing these sorts of considerations, none of which are "necessary, nor is any one of them necessarily sufficient," for determining whether a defendant was a major participant].) In *People v.*

11

*Clark* (2016) 63 Cal.4th 533, 617, the Supreme Court found reckless indifference to "encompass[ ] a willingness to kill (or to assist in another killing) to achieve a distinct aim" and listed factors to consider in making this determination, including use or awareness of the presence of a weapon or weapons, physical presence at the scene and opportunity to restrain confederates or aid victims, duration of the crime, knowledge of any threat the confederates might represent, and efforts taken to minimize risks.  (*Id*. at pp. 618-623.)  These factors are present here.

DISPOSITION

The order is affirmed.


O'ROURKE, J.

WE CONCUR:


HUFFMAN, Acting P. J.


DATO, J.

12